Herman **VAUGHN**

v.

Elzie Mae **CREWS.**

No. 6625.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 1, 1956.

Rehearing Denied Oct. 29, 1956.

Snodgrass & Calhoun, Amarillo, for appellant.

Adkins, Folley, McConnell & Hankins, Amarillo, for appellee.

NORTHCUTT, Justice.

For a statement of the nature of this case and the disposition made of the case by the trial court, we repeat the statement as made by the appellant and which appellee admits is correct:

"This suit was instituted by appellant, Herman Vaughn, against the appellee, Elzie Mae Crews, for the recovery of certain real property because of the fraudulent representations made by appellee to appellant in procuring title to such property. Appellant's action was stated in four counts, alleged alternatively; viz. trespass to try title; cancellation and rescission of the deed and release because of fraud in the inducement; a constructive trust; and because of appellee's fraud, rescission of the conveyance by failure of appellee to pay the vendor's lien note when due.

"Appellee's answer contained various exceptions, which were overruled, a plea of not guilty, a general denial, affirmatively that the instruments sought to be cancelled were unconditional; Article 3995, Subdivisions 3 and 4; and Article 1288 of the Revised Civil Statutes.

"Trial was had before a Jury and at the close of appellant's evidence, appellee's motion for an instructed verdict was granted by the Court and Judgment thereupon entered that plaintiff take nothing by his suit, from which, appellant has prosecuted this appeal."

Appellant and appellee were married on or about July 15, 1950, and lived together as man and wife for only about six weeks. They were divorced in January, 1951, and appellee married a man by the name of Fenton a few weeks after she was separated from Mr. Vaughn. Appellee continued to live with Fenton for some time and was finally divorced from him on the grounds of cruel treatment in March of 1954. In the divorce decree from Fenton, appellee was restored to her former name of Elzie Mae Crews.

On October 25, 1952, the appellant made and executed a warranty deed transferring to appellee the property involved in this suit. The warranty deed was in the regular form. The consideration was $10 paid by Elzie Mae Crews out of her separate property as follows: $10 cash in hand paid, the receipt of which is hereby acknowledged, and the execution and delivery of one vendor's lien of even date in the principal sum of $7,000 bearing interest from date at the rate of seven per cent per annum and the further consideration being the assumption of the balance due on all outstanding indebtedness charged against said property. Appellee executed the $7,000 vendor's lien note mentioned in the deed, both the deed and the note were placed in the hands of an attorney who was to hold the deed until appellant gave him further instructions or called for the deed. Later appellant secured the deed from the attorney and had the same filed for record on June 10, 1953, and the same was recorded in Volume 635 at page 13 of the Deed Records of Potter County, Texas; thereafter appellant did not make any payments upon the indebtedness that appellee assumed in the deed but appellee made what payments were made. Appellant released the $7,000 vendor's lien and had the same recorded on June 29, 1954, in Volume 668, page 463, Deed Records, Potter County, Texas.

Appellant testified, when appellee talked to him about deeding the property to her, that in case he died, he wanted appellee to have the property. It was the contention of appellant that he deeded this property to appellee and also gave the release of the vendor's lien because appellant had promised to marry him and that he believed her. We think, from this record, appellant surely must have been enraptured by the cunning wiles of appellee; but there is nothing in this record to indicate that appellant was not a man of common ability and knowledge or should have known that he had no right to secretly collaborate with the appellee seeking to secure the wife of another man.

■ The trial court instructed the jury to return a verdict in behalf of the defendant and further that appellant and appellee were equally guilty of wrongdoing and should be left as they were found. We believe the court made the right disposition of this case and that the case should be affirmed.

■ It should be noted that appellant knew at all times up to the date of the divorce in March 1954, that appellee was married and could not marry him, and that any contract he would make for her to marry him would be void and against public policy. He cannot plead ignorance of the law as to her status at all times pertinent to their transactions in this matter. All of their acts in reference to getting married were such that they cannot be approved, and they both were guilty of wrongdoing. We think any promise made by appellee as pleaded by appellant was invalid, against public policy, and unenforceable. Nicholas v. Holder, Tex.Civ.App., 244 S.W.2d 313, writ refused, N.R.E.

■ Of course, appellant contended he did what he did because appellee promised

to marry him; but we might also show the statement made by appellant as to what caused him to record the deed transferring the property to appellee where he stated:

"Q. About how long were those instruments in the attorney's office? A. Well, they were there from the time they were drawn until—well, I don't know—whenever they were recorded.

"Q. Let us take this deed for example: this deed shows it was recorded on June 10, 1953. A. Well, they was in the attorney's office from the time it was drawed until it was recorded.

"Q. How was that instrument recorded? A. I beg your pardon?

"Q. Who got the instrument and who did the recording of the instrument? A. I got the instrument and had it recorded for her.

"Q. At whose request did you record it? A. The defendant's.

"Q. Tell the jury, now, just what transpired that caused you to go up to the attorney's office? A. Well, she come in and told me, says 'I would like to have a deed to that so I would be safe on it if anything happens.'

"And then, of course, there was payments to make on the place and everything.

"And I said, 'As long as we are going to go ahead and get married, I will go and get it for you.'

"And I went and got it and had it recorded for her."

As to the release of the vendors lien he stated:

"Now, if you will, please explain to the jury how this release happened to be recorded or taken from the attorney's office. A. Well, I kept trying to get her to let me have a little money along. I was as broke as could be.

"And she says, 'I ain't making any money. I am broke, too.' And she says, 'I have got to get a loan on that thing or I am going to lose the whole works.'

"So I released that so she could get the loan raised on it. So that is how come that to be done."

Nothing was promised here by the appellee in the way of marriage for the delivery of the instruments. Judgment of the trial court is affirmed.